IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MESHETTE JAWANTAY BRIERS,      )
                                )
         Plaintiff,             )
                                )
    v.                          )      CIVIL ACTION NO. 2:13cv73-CSC
                                )                (WO)
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security,  )
                                )
         Defendant.             )

## MEMORANDUM OPINION

### I. Introduction

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act, 42 U.S.C. §§ 401, *et seq*., and for supplemental security income benefits under

Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., alleging that she was unable

to work because of a disability.  Her application was denied at the initial administrative level.

The plaintiff then requested and received a hearing before an Administrative Law Judge

("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council

rejected a subsequent request for review.  The ALJ's decision consequently became the final

decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*,

792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant

to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have consented to the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)    Is the person presently unemployed?
(2)    Is the person's impairment severe?
(3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)    Is the person unable to perform his or her former occupation?
(5)    Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction**.  The plaintiff was 29 years old on the alleged date of onset of disability, April 1, 2010.[4]  (R. 131).  She has her general equivalency diploma (GED).  (R.

---

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

[4]  When she applied for benefits, Briers alleged an onset date of March 1, 2010.  (R. 42).  At the administrative hearing, she amended her onset date to April 1, 2010.  (R. 57).

3

174).  Her past work experience includes work as a hospital cleaner, security guard, housekeeper/cleaner in a hotel, cashier checker, production assembler, and laborer.  (R. 63).  Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "obesity, migraine headaches, and atypical chest pain."  (R. 23).  The ALJ concluded that Briers' hypertension and left leg pain and swelling were not severe impairments.  (R. 30-31).  The ALJ concluded that the plaintiff could perform her past relevant work as a production assembler, and thus, she was not disabled.  (R. 32).

 **B.  Plaintiff's Claims**.  As stated by Briers, she presents two issues for the Court's review:

  1. The Commissioner's decision should be reversed because the ALJ erred in failing to assign weight to any medical opinion in support of her residual functional capacity finding.

  2. The Commissioner's decision should be reversed because the ALJ erred in finding Ms. Briers' fibromyalgia and leg pain and leg swelling to not be severe impairments.

(Doc. # 12, Pl's Br. at 3).

## IV.  Discussion

 A disability claimant bears the initial burden of demonstrating an inability to return to her past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family

or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address the plaintiff's claims.

     **A.**     **Treating Physician's Opinion.** Briers argues that the ALJ's residual functional capacity assessment is erroneous because the ALJ failed to give any weight to the opinion of her treating physician, Dr. Mamath Siricilla. (Doc. # 12 at 3). In essence, the plaintiff argues that if the ALJ accepted Dr. Siricilla's assessment about her physical impairments, she would be disabled. On July 15, 2010, Dr. Siricilla completed a physical capacities evaluation form describing Briers's physical limitations. (R. 496). According to Dr. Siricilla, Briers could sit and stand or walk for one hour during the work day; could lift 10 pounds occasionally and 5 pounds frequently; and she would miss more than four days per month due to her impairments. (R. 496). Dr. Siricilla added that her assessment was based on Briers' fibromyalgia, chronic back pain, history of myocarditis, migraine headaches,

obesity and hypertension.  (*Id*.).  Dr. Siricilla also completed a medical statement regarding

Briers' migraine headaches in which she opined that Briers suffered from migraines several

times a week and that she could not work while suffering from a headache.  (R. 497).

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial

weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the

claimant's treating physician unless good cause exists for not doing so.  *Jones v. Bowen,* 810

F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

The Commissioner, as reflected in her regulations, also demonstrates a similar preference for

the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals most able to provide
> a detailed, longitudinal picture of your medical impairment(s) and may bring
> a unique perspective to the medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of individual examinations,
> such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)).

The ALJ's failure to give considerable weight to the treating physician's opinion is reversible

error.  *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating

physician's opinion.  The requisite "good cause" for discounting a treating physician's

opinion may exist where the opinion is not supported by the evidence, or where the evidence

supports a contrary finding.  *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent

6

with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ rejected the assessments of Dr. Siricilla.

> As for the opinion evidence, Dr. Siricilla's assessments dated July 15, 2011, are given no weight, as they are totally inconsistent with all records of evidence. Dr. Siricilla reported the claimant to have pain to the extent that it prevented her from working and assessed her capable of sitting, standing, and walking a total of two hours in an eight-hour day due to fibromyalgia, chronic back pain, obesity, history of myocarditis, migraine headaches, and hypertension.

> Fibromyalgia was diagnosed and treated by Dr. Jakes from May 2009 through May 2010. However, he noted all laboratory findings to be normal with the exception of low vitamin D levels. His examinations consistently revealed the claimant to have full range of motion of all joints without pain, swelling, stiffness, or instability. Chronic back pain was not diagnosed or treated by Dr. Siricilla or any other facility according to the records. The claimant is obese and has been recommended diet and exercise repeatedly by Dr. Siricilla's facility as well as the claimant's cardiologist and has been noncompliant.

7

However, as of July 2, 2011, she reported that she had begun walking and was feeling well. Myocarditis was diagnosed in April 2009 and the claimant has complained of chest pain since that time. She has undergone full cardiac workup with no findings. The acute myocarditis found in April 2009 remains a history of myocarditis and not an impairment at any time since her alleged onset date. The claimant's migraine headaches were treated by a neurologist in 2009. She had negative computed tomography scans and magnetic resonance imaging of the head and brain. She has ceased to take medication for her migraines according to her report to Dr. May in July 2010. Last of all, Dr. Siricilla recited hypertension as one of the reasons for the claimant's restrictions. However, her records consistently reveal controlled hypertension, even when she was not on medication. Thus, Dr. Siricilla's assessments are totally without basis and rejected.

(R. 31)

The ALJ's determination is supported by substantial evidence. On February 25, 2009, Briers presented to the University of Alabama Birmingham ("UAB") School of Medicine complaining of headaches. (R. 419). She had no nausea, vomiting, aura, or blurred vision. (*Id*.). CT scans of her brain and cervical spine were negative. (*Id*.) At that time, she reported no other complaints other than headaches. (*Id*.)

On March 13, 2009, Briers presented to Alabama Neurological Clinic complaining of headaches. (R. 246). At that time, she complained of photophobia, phonophobia, nausea and occasional vomiting. (*Id*.). She could tandem walk well; she had no ataxia on her gait. She was started on medication to interrupt the headache cycle. (*Id*.) An MRI of her brain on April 6, 2009 was "normal." (R. 251). On April 14, 2009, Briers returned to the clinic complaining of headaches but she moved her extremities and there was no evidence of ataxia. (R. 242).

On April 27, 2009, Briers presented to the emergency room complaining of a headache for two (2) days.  She had a rash on her thigh.  (R. 311-316).  She was admitted to the hospital on April 28, 2009 after complaining of headaches, left lower extremity erythema and itching.  (R. 324).  She was also diagnosed with cellulitis.  (*Id*.)  While Briers' extremities did not show any edema, she had some non-tender erythema which was treated with antibiotics.  (R. 325).  A mass on Briers' left thigh appeared to be subcutaneous fat and an MRI confirmed a fatty area.[5]  (R. 332-33).  During her hospitalization, Briers was "ambulating in halls without difficulty."  (R. 249).

Once admitted, Briers began to experience chest discomfort.  (R. 324)  She underwent a cardiac consultation and assessment.  (R. 346-48).  An April 29, 2009, echocardiogram indicated no abnormalities and normal ventricles.  (R. 359-60, 384, 386, 389).  On May 3, 2009, Briers was diagnosed with myocarditis.  (R. 349).

When she was discharged on May 5, 3009, her diagnoses on discharge were "[a]cute myocarditis (possibly viral versus rheumatologic), [c]ellulitis/dermatitis left buttock, thigh responded to antibiotics, left thigh mass referred to oncologist orthopedist, [m]ild anemia, and headaches."  (R. 248).

On May 13, 2009, Briers presented to Montgomery Rheumatology Associates for an "evaluation of hurting all over."  (R. 423).  At that time, she had "full range of motion of all joints without pain, stiffness, swelling or instability."  (*Id*.)  Leg raises were negative.  (*Id*.)

---

[5] Briers was sent for an orthopedic evaluation to rule out liposarcoma.  (R. 342-43).  The left mass was ultimately determined to be benign.  (R. 417-18).

Dr. Jakes diagnosed Briers with fibromyalgia, and prescribed Flexeril.  He also indicated that he would conduct "a complete laboratory evaluation for fibromyalgia and see her back in a month."  (*Id.*)

On May 28, 2009, Briers was seen by cardiologist Dr. Wool.  (R. 407-11).  Although she continued to complain of chest pain, an echocardiogram was unremarkable.  (R. 404).  Briers did not complain of chest pain during a stress test on June 3, 2009.  However, the test was terminated due to her complaints of fatigue.  (R. 401).  Further testing revealed a mild fixed defect in the heart but was unremarkable in any other aspect.  (R. 402).

On June 19, 2009, Briers complained to Dr. Jakes of loss of balance, joint pain and leg cramps.  (R. 425).  Although Dr. Jakes noted trigger points in Briers' back, he also noted "full range of motion of all joints without synovitis."  (*Id.*)  Dr. Jakes opined that "[b]asically everything was normal except for a low vitamin D level."  (R. 426).  Dr. Jakes continued to diagnose fibromyalgia but prescribed trazadone instead of Flexeril.  (*Id.*).  On June 25, 2009, Briers complained of headaches.  (R. 240-41).  Maxalt alleviated her pain.  (*Id.*)  On that date, Briers was diagnosed with intractible migraine headaches, sleep apnea and hypertension.  (R. 241).  There is no diagnosis of leg pain or fibromyalgia.  (*Id.*)

On June 28, 2009, Briers presented to the emergency room complaining of headaches, chest pain, shortness of breath and nausea.  (R. 286).  No pulmonary disease was noted.  (R. 300).  On June 29, 2009, Briers complained of difficulty sleeping, and waking with a

headache.  (R. 238-39).  It was recommended that she undergo a polysomnography.[6]  (*Id.*)

On July 21, 2009, Briers presented to UAB for her second visit.  At that time, she reported "doing fine today."  (R. 416).  "Today, she does not have any active complaints. She states that she cannot work and is fighting for disability." (*Id.*)  Dr. Sarvepalli references Dr. Jakes' diagnosis of arthritis.  (*Id.*)

On July 23, 2009, Dr. Jakes evaluated Briers for fibromyalgia.  She was taking Elavil and was "generally feeling better."  (R. 436).  Dr. Jakes noted that Briers "has full range of motion of all joints without pain, stiffness, swelling or instability.  She has no trigger points in her back."  (*Id.*)  Although Dr. Jakes diagnosed Briers with fibromyalgia, he also noted that "[t]his problem is doing well."  (R. 437).

On October 22, 2009, Briers presented to the emergency room complaining of a severe headache and lower left extremity pain.  (R. 271, 583).  On November 15, 2009, Briers complained again of headaches, (R. 260), but a CT scan of her brain was normal.  (R. 269, 580).

On March 10, 2010, Dr. McCormick, a cardiologist, examined Briers for chest pain. Briers denied "muscle cramps, joint pain, joint swelling, . . .  back pain, stiffness, muscle weakness. . ."  (R. 397-98, 468-69).  A treatment note indicates that Briers continued to walk but she was not losing any weight.  (R. 396, 399, 467, 470).  An examination revealed full range of motion of all joints.  (R. 398, 469).  A full cardiac work up was negative, and Dr.

---

[6] There is no evidence in the record to suggest that Briers was diagnosed with sleep apnea after a sleep study.

McCormick noted that it was atypical to have angina at Briers' age.  (R. 399, 470).

Dr. Jakes saw Briers again on May 28, 2010.  At that time, he noted that she can "walk without difficulty.  She stopped taking Elavil because it wasn't helping.  She still has occasional headaches."  (R. 438-39, 457-58).  Dr. Jakes diagnosed Briers with fibromyalgia but also noted that she was "stable and doing well."  (R. 439, 458).

Briers presented to her cardiologist on July 7, 2010.  At that time, she reported that she was "very sedentary with no regular exercise.  She does not follow a regular diet." (R. 462-65).  She complained of pain in her left leg related to the mass.  (*Id*.)  An EKG was normal.  (R. 464).

Dr. Stuart May conducted a consultative physical examination of Briers on July 10, 2010.  Briers complained of leg pain caused by the mass, migraine headaches, and chest pain. (R. 441-444).  Dr. May noted that Briers "walked to the exam room without assistance. [She] sat comfortably.  She got on and off the exam table.  She took her shoes off and put them back on.  I noted no inconsistencies."  (R. 442).  At this examination, Dr. May noted that no assistive device was necessary or used.  (R. 443).  Dr. May opined

> There is a scarcity of findings in this claimant. . . . No muscle spasms, tenderness, effusion or deformities are noted.  Motor strength bulk and tone; lower extremity bilaterally 5/5 no atrophy.  Upper extremity bilaterally 5/5 no atrophy.

(R. 443).

On November 22, 2010, Briers underwent a transthoracic echocardiogram which was normal with no significant abnormalities noted.  (R. 460-61, 490-91).

12

On April 19, 2011, Briers complained to her cardiologist of sharp chest pain. (R. 486-89). She was not exercising regularly. (*Id*.) She was diagnosed with atypical chest pain. (*Id*.) On April 28, 2011, a CTA heart scan was normal. (R. 483-85).

Dr. McCormick saw Briers on June 2, 2011. Briers had since undergone a coronary CTA but she was still experiencing episodes of "atypical pain." (R. 478). Briers reported that she "started to walk daily and feels well." (*Id*.) Dr. McCormick noted that Briers' complaints of chest pain were atypical, "[h]er coronary CTA is within normal limits," and her hypertension was well-controlled. (R.479-80).

On June 19, 2011, Briers presented to the emergency room complaining of a headache. (R. 519). She reported no sensitivity to light and no nausea. She also indicated that Lortab usually alleviated her pain. (*Id*.) In addition, Briers complained of thigh pain. Her thigh was non-tender and she could ambulate without difficulty or assistance. (R. 520).

Briers presented to Dr. Siricilla at UAB on June 22, 2011. At that time, she complained of knee pain. (R. 508). Dr. Siricilla diagnosed Briers with arthritis of the knees, "most likely secondary to obesity." (*Id*.) Briers requested a cane for walking. (R. 509). A x-ray of Briers' right knee on July 5, 2011, indicated "premature medial DJD." (R. 510, 507). A x-ray of her left knee indicated no abnormalities. (R. 513, 507).

Briers presented to UAB on July 11, 2011 complaining of chronic headaches, myocarditis, left leg pain, hypertension and fibromyalgia. (R. 506-07). On July 15, 2011, Briers presented to UAB complaining of back pain. (R. 505).

13

Dr. Siricilla completed the physical capacities evaluation, a clinical assessment of pain form and a medical statement regarding migraine headaches on July 15, 2011.  (R. 495-967). Between July 21, 2009, and July 15, 2011, Briers was seen at UAB six times.[7]  (R. 416-18, 419, 508-09, 506-07, 505).  Three of those visits occurred between June 22, 2011 and July 15, 2011.  (R. 508-510).  Dr. Siricilla saw Briers at most three (3) times.[8]  It is clear that Dr. Siricilla's notes reflect complaints as told to her by Briers.  At the administrative hearing, Briers testified that Dr. Harris told her to not return to work and he prescribed the cane for her because she fell when her left leg collapsed on her.  (R. 43).  She also testified that the pain in her **left** leg and her heart condition are the impairments that interfere with her ability to work. (R. 44).  The medical records contradict Briers's testimony regarding these two impairments.  There is no indication in the medical records that Dr. Harris opined that Briers could not return to work.  In addition, while an x-ray indicated early degenerative changes in Briers' **right** knee, an x-ray of her **left** knee was unremarkable.  Multiple medical records indicate no tenderness of Briers' **left** leg, and no interference with her ability to ambulate. The cardiology records indicate no abnormal cardiac condition.  Notwithstanding the medical records, Dr. Siricilla opined that Briers experienced significant pain that would interfere with her ability to work.  (R. 495).

The  ALJ may disregard the opinion of a physician, provided that she state with

---

[7]  The medical records indicate that Dr. Sarvepelli saw Briers on February 25, 2009, May 19, 2009, and July 21, 2009.  (R. 416-419).

[8]  The first medical record that indicates Dr. Siricilla saw Briers is dated June 22, 2011.  (R.508-09)

particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). The ALJ examined and evaluated the medical records for evidence supporting Dr. Siricilla's assessment of the severity of Briers's physical impairments. While it is clear that Briers suffers from some pain, the record contains only minimal evidence, other than the plaintiff's own self-reports, of the *severity* of her impairments ascribed to her by Dr. Siricilla in her assessment of Briers. Dr. Siricilla rarely saw Briers. The medical records do not support Dr. Siricilla's assessments. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Siricilla's opinion regarding the *severity* of Briers's physical impairments.

      **B.**    **Severe impairments of fibromyalgia and leg pain and swelling**. Briers next argues that the ALJ committed reversible error by failing to find her fibromyalgia and leg pain and swelling severe impairments at step 2 of the sequential analysis. (Doc. # 12 at 6). The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel*, 800 F.2d at 1031. A physical impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). A severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 fn. 12 (1987) citing with approval Social Security Ruling 85-28 at 37a. The plaintiff has the

"burden of showing her impairment is "severe" within the meaning of the Act." *McDaniel*, 800 F.2d at 1030.

It is Briers' obligation, in the first instance, to demonstrate that she can no longer perform her past relevant work, and she is entitled to benefits. *See Lucas*, 918 F.2d at 1571 (the claimant bears the burden of establishing the existence of a disability). "Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits." *McDaniel*, 800 F.2d at 1031. "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988).

In finding that the plaintiff's fibromyalgia and leg pain and swelling were not severe impairments, the ALJ reviewed the plaintiff's medical records. After carefully reviewing the medical records, the court concludes that substantial evidence supports the ALJ's conclusion that the plaintiff's fibromyalgia and leg pain and swelling do not constitute "severe impairments" within the meaning of the Social Security Act. Briers applied for disability benefits alleging a disability onset date of March 1, 2010. (R. 131, 135). In her disability report, Briers asserted that she cannot work because of "[m]ass in leg, hbp, heart problems, migraines, arthritis." (R. 174).

Her medical records reveal that while Briers was diagnosed with fibromyalgia, she no

16

longer has trigger points, and her condition has improved.  Furthermore, although Briers complains of leg pain, the mass in her leg has repeatedly been noted as non-tender.  Her medical records demonstrate that Briers has no difficulty ambulating.  In addition, Briers requested a cane from Dr. Siricilla, shortly before Dr. Siricilla completed her functional assessment forms.

"[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Gray v. Comm'r of Soc. Sec.*, 426 Fed. Appx. 751, 753 (11th Cir. 2011); *Manzo v. Comm'r of Soc. Sec.*, 408 Fed. Appx. 265, 269 (11th Cir. 2011).  While the record indicates that the plaintiff has been diagnosed with fibromyalgia, the medical evidence in the record indicates that this condition is well controlled and does not have more than a minimal effect on her ability to perform basic work activity.  Briers has failed to demonstrate that her fibromyalgia "significantly limits" her ability to work.  *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  *See also Reynolds v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 850, 852 (11th Cir. 2012).

With respect to her leg pain and swelling, the consultative physician opined that "[t]here was a scarcity of findings in this claimant."  (R. 443).  He noted that no assistive device was needed or used, (*id.*) and that Briers "walked to the exam room without assistance."  (R. 442).  Briers sat comfortably and was able to get on and off the examination

table.  (*Id.*)  Her coordination was normal as was her station and gait.  (*Id.*)  This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards.  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). The only evidence that Briers points to that suggests that her fibromyalgia and leg pain and swelling[9] compromise her ability to work is her own testimony, which the ALJ discounted. Consequently, the court concludes that Briers has failed to meet her burden of establishing that the ALJ's decision regarding the severity of these impairments was not supported by substantial evidence.[10]

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is due to be affirmed.

A separate order will be entered.

Done this 16th day of December, 2013.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[9]  The court scoured the medical records and has not found a single incident where a medical professional noted that Briers suffered from swelling in her leg.

[10]  Even if the court were to conclude that the ALJ's determination at step two was erroneous, any error was harmless because the ALJ fully considered and analyzed all the medical evidence including evidence of headaches. *See Delia v. Comm'r of Soc. Sec.*, 433 Fed. Appx. 885, 887 (11th Cir. 2011); *Burgin v. Comm'r of Soc. Sec.*, 420 Fed. Appx. 901, 903 (11th Cir. 2011).